# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

PEDRO QUINTERO-ENRIQUES )
*a/k/a Miguel Angel Quintero*, )
   Movant, )
                       )    **CIVIL ACTION NO. 1:18-00105-WS**
v.                     )
                       )**CRIMINAL ACTION NO. 1:16-00212-WS-N**

UNITED STATES OF AMERICA, )
   Respondent. )

## REPORT AND RECOMMENDATIONS

Pedro Quintero-Enriques, a/k/a Miguel Angel Quintero ("Quintero"), a prisoner proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 81[1]) challenging the judgment entered against him in the above-styled criminal action. The motion has been referred to the undersigned Magistrate Judge for appropriate action. *See* S.D. Ala. GenLR 72(b); (3/5/2018 electronic reference). Under S.D. Ala. GenLR 72(a)(1) and (2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of these proceedings brought under 28 U.S.C. § 2255 in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

Quintero, utilizing a form provided him by the Federal Defender's Office for this district (*see* Doc. 81), wrote his § 2255 motion in Spanish,[2] a language in which the undersigned is not fluent. Accordingly, in the exercise of discretion, the undersigned authorized the expenditure of funds under 18 U.S.C. § 3006A(e)(1) to employ the services of a translator to translate the motion into English.[3] *See Gonzales v. United States*, No. 3:17-CV-603-M-BN, 2017 WL 1231689 (N.D. Tex. Apr. 4, 2017) (explaining various options available to a district court when confronted with a § 2255 motion written in Spanish, and choosing to authorize funds to translate document). The translator completed this task,[4] and a copy of the English-translated motion has been filed into the record (*see* Doc. 82) and served on Quintero (*see* Doc. 83).[5]

As ordered under Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Government has timely filed a response (Doc. 85) in opposition to Quintero's § 2255 motion. Though given the opportunity, Quintero has submitted no reply to the Government's response, and the deadline to do so has expired. (*See* Doc. 83). The motion is now under submission for determination of whether expansion of the

---

[2] The record indicates that Quintero was provided a Spanish-language interpreter for all hearings at which he was present.

[3] Quintero was found indigent and appointed counsel under the Criminal Justice Act in the above-styled criminal action, and there is no indication that his situation has changed since he was sentenced on November 14, 2017.

[4] The undersigned will hereinafter cite to the translated version of Quintero's § 2255 motion (Doc. 82) when discussing Quintero's claims and allegations.

[5] The translator has substantial experience providing Spanish-language interpretation services to this Court.

record and/ or an evidentiary hearing is warranted. *See* (Doc. 83); Rules 7 and 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Having reviewed the parties' submissions in accordance with Rule 8(a) of the Rules Governing Section 2255 Proceedings, the undersigned finds that neither expansion of the record nor an evidentiary hearing is warranted, and that Quintero's § 2255 motion is due be **DENIED** and **DISMISSED with prejudice**.

## I.    *Background*

On February 23, 2017, the grand jury for this judicial district issued a 3-count superseding indictment against Quintero. (Doc. 14). Count 1 charged an offense of illegal re-entry into United States after deportation, in violation of 8 U.S.C § 1326; Count 2 charged an offense of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); Count 3 charged an offense of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1). Quintero, represented by appointed counsel, Assistant Federal Defender Christopher Knight, initially entered a plea of not guilty to all charges. (*See* Doc. 18 at 1). On April 7, 2017, Quintero filed a motion to suppress evidence seized by state law enforcement officers from Quintero's home, as well as statements made by Quintero to the officers. (Doc. 35). The Government filed a response in opposition to the suppression motion (Doc. 41), but before the Court ruled on the motion, Quintero changed his plea and entered a plea of guilty to Counts 1 and 2 of the superseding indictment, pursuant to a written plea agreement. (*See* Docs. 43, 46).

On November 14, 2017, the Court sentenced Quintero to concurrent terms of imprisonment of 108 months as to each of Counts 1 and 2, to be followed by 3 years of supervised release, and an assessment of $200. (*See* Doc. 56). Count 3 was dismissed on motion of the Government, and written judgment was entered November 17, 2017. (*See id.*). Quintero appealed the judgment (*see* Doc. 58), but on December 21, 2017, the Eleventh Circuit Court of Appeals dismissed the direct appeal on Quintero's motion for voluntary dismissal. (*See* Doc. 80). Quintero filed the present § 2255 motion approximately 2 months later.

## II.    *Legal Standards*

### A.    General Considerations under § 2255

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014). Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

The " 'concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). *See also, e.g.*, *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("'A guilty plea, since it admits all the

elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.'" (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam)); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) (" 'Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction.' " (quoting *United States v. Bonilla*, 579 F.3d 1233, 1240 (11th Cir. 2009)). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Therefore, when, as here, a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). *See also Bousley*, 523 U.S. at 618 ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553 (quoting *United States v. Guerra*, 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount

to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted).  *Accord, e.g., Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).  In making this determination, the Court is aware that it must "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255."  *Winthrop-Redin*, 767 F.3d at 1215.

## B.    Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984).  "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."  *Massaro v. United States*, 538 U.S. 500, 509 (2003).  Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."  *Id.* at 504.  *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014).  "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.'" *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).

" 'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test is not easily met; ... 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]'" *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g.*, *Burt v. Titlow*, 571 U.S. 12, 24 (2013) ("[T]he Sixth Amendment does not guarantee the right to

perfect counsel; it promises only the right to effective assistance…").  "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence,"…in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (citing *Strickland*, 466 U.S. at 689-91) (citations and quotations omitted).

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.' " *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting *McMann*[ *v. Richardson*], 397 U.S. [759,] 770, 90 S. Ct. [1441,] 1448[ (1970)]). The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *Slicker v. Dugger*, 878 F.2d 1380, 1381 n.1 (11th Cir. 1989) (per curiam); *Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir. 1989); *McCoy v. Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986) (per curiam)...
>
> ...
>
> ...*Hill* clarified the *Strickland* second or "prejudice" requirement in the context of guilty pleas: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S. Ct. at 370; *Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (per curiam); *see Long v. United States*, 883 F.2d 966, 968 n.4 (11th Cir. 1989) (per curiam); *Agan v. Dugger*, 835 F.2d 1337, 1340 n.6 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205, 108 S. Ct. 2846, 101 L. Ed. 2d 884 (1988); *see also Holmes*, 876 F.2d at 1553, *Slicker v. Wainwright*, 809 F.2d 768, 770 (11th Cir. 1987) (These cases were remanded to the district court to determine if accurate, rather than incorrect, information by the defense counsel as to the length of sentence would have changed the defendant's plea.); *cf. Betancourt v. Willis*, 814 F.2d 1546, 1549 (11th Cir. 1987) (This court affirmed the district court's granting a habeas corpus petition based upon its

conclusion that petitioner's plea was not voluntary and that his counsel provided ineffective assistance because the evidence was "uncontroverted that petitioner was completely unaware of the ultimate consequences of his plea because his counsel misrepresented the existence of a sentence reduction agreement."). The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59, 106 S. Ct. at 370; *McCoy*, 804 F.2d at 1198–99.

The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973); *see Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir.) (per curiam) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process."), *cert. denied*, 469 U.S. 837, 105 S. Ct. 134, 83 L. Ed. 2d 74 (1984). The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions" in his counsel's advice regarding the plea. *McMann*, 397 U.S. at 774, 90 S. Ct. at 1450; *Tollett*[ *v. Henderson*], 411 U.S. [258,] 267, 93 S. Ct. [1602,] 1608[ (1973)]; *see Hill*, 474 U.S. at 56, 106 S. Ct. at 369 ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). Without "reasonably effective assistance of counsel in connection with the decision to plead guilty," a defendant cannot enter a knowing and voluntary plea because the plea does not represent an informed choice.

*McCoy*, 804 F.2d at 1198; *Scott*[ *v. Wainwright*], 698 F.2d [427,] 429[ (11th Cir. 1983)]. Based upon his familiarity with the facts and law, defense counsel must advise the defendant. *Scott*, 698 F.2d at 429. "Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but it must be within the realm of competence demanded of attorneys representing criminal defendants." *Id.* (emphasis added); *see McMann*, 397 U.S. at 771, 90 S. Ct. at 1449; *Long*, 883 F.2d at 969.

The Supreme Court has recognized that the decision to plead guilty may occur without all of the state's evidence and necessarily takes place without knowledge of all facts revealed by witnesses at trial. *McMann*, 397 U.S. at 769–70, 90 S. Ct. at 1448. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); *Downs–Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. *Tafero*, 796 F.2d at 1320; *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986), *cert. denied*, 481 U.S. 1042, 107 S. Ct. 1986, 95 L. Ed. 2d 825 (1987)…

*Stano v. Dugger*, 921 F.2d 1125, 1149-51 (11th Cir. 1991) (en banc) (footnote omitted).[6] In claiming prejudice under *Strickland* and *Hill*, "[a] movant must [also]

---

[6] *Accord, e.g., Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993) ("The Supreme Court has held 'that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.' *Hill*, 474 U.S. at 58, 106 S. Ct. at 370. Under the *Strickland* test, Garrett initially must show 'that counsel's representation fell below an objective standard of reasonableness.' *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). While it need not be errorless, counsel's advice '*must be within the realm of competence demanded of attorneys representing criminal defendants.*' *Stano*, 921 F.2d at 1151. Providing meaningful advice on the options available to a defendant obligates counsel 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. *Hill* modified the second part of the *Strickland* test in the

allege facts that would prove that a decision not to plead guilty 'would have been rational under the circumstances.'" *Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

### III.   *Analysis*

Quintero alleges four grounds for relief in his § 2255 motion, each claiming some form of ineffective assistance of trial counsel.  The undersigned will address each in turn.

### A.   **Ground 1**

Ground 1 alleges that Knight did not do any meaningful work in Quintero's case because he was preoccupied with a personal matter.  In support, Quintero alleges:

> The attorney Christopher Knight, came to offer me ten (10) years.[7]  I asked him, why he came to offer me that time, without having worked in the case, and it bothered him when I told him (about) what the discovery papers said, and that I had read that Vanesa Rodriges accused me of selling marihuana, and that the cops had not bring in, the testimony that she did. (They did not brought this statement on the Sentencing day).

---

context of a guilty plea. Garrett 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' 474 U.S. at 59, 106 S. Ct. at 370.").

7 Rather than "offering" Quintero a 10-year sentence, it is more likely that Knight was fulfilling his duty to advise Quintero that he faced a mandatory minimum sentence of 10 years under Count 3 alone, due to the fact that Count 3 charged him with possession of over 50 grams of methamphetamine with intent to distribute. *See* (Doc. 14 at 2; Doc. 13 [REVISED Sentencing Guideline Worksheets] at 5); 28 U.S.C. § 841(b)(1)(A) (providing for mandatory minimum sentence of 10 years imprisonment for violation of § 841(a)(1) involving over 50 grams of methamphetamine).

(Doc. 82 at 7).  Liberally construing his § 2255 motion, Quintero appears to further fault Knight's failure to investigate Vanesa Rodriges because she also had knowledge of who put the firearms underlying the Count 2 charge in the truck where they were found.  (*Id.* at 10).[8]  Quintero also appears to fault Knight for making him admit to driving the truck where the firearms were found, claiming there was evidence showing that Quintero did not use the truck.  (*Id.*).[9]

Quintero fails to explain the significance of Rodrigues's accusation of him "selling marihuana," and none is apparent from the record, especially since marijuana was not at issue in any of charges against him.[10]  As for the evidence concerning the firearms at issue in Count 2, the record – specifically, the express

---

[8] On this point, Quintero alleges: "I did not put weapons in the truck.  Who put the weapons in the truck, set them to make me evil, grabbed the weapons from the other trailer -that its about 300 feet- from the trailer in which they found them, if they bring the statement of Vanesa Rodriges you can see that everything was planned to hurt me..." (Doc. 82 at 10).

[9] On this point, Quintero alleges:

> In the truck Honda 4x4 they found the weapons. I didn't say, that this is the truck that I drive. I told the investigator, that I picked up the truck on 10-15-2016, on a Saturday afternoon, because it was in the mechanical workshop for more than 30 days. The engine was changed, and its not my truck.
>
> I drive my Ford truck Ranger, Model 1989 and my Traker Chevrolet 20001(2001?) I had everything in order with insurance.
>
> I did not have to admit, that the truck F150 Ford 4x4, was driven by me.

(Doc. 82 at 10).

[10] Count 3 charged Quintero with possession of methamphetamine and cocaine base, but not marijuana.  (*See* Doc. 14 at 3).

terms of Quintero's plea agreement and his sworn testimony given at his guilty plea hearing – contradicts any assertion that, but for Knight's purported failure to investigate this evidence, Quintero would not have pleaded guilty and would have insisted on going to trial.

> [P]lea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977); *see id.* ("To allow indiscriminate hearings in federal postconviction proceedings ... for federal prisoners under 28 U.S.C. § 2255 ... would eliminate the chief virtues of the plea system—speed, economy, and finality."). While § 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," ... "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." *Id.* at 71–72, 97 S. Ct. 1621. As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74, 97 S. Ct. 1621; *see id.* at 80 n. 19, 97 S. Ct. 1621 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74, 97 S. Ct. 1621.

*Winthrop-Redin*, 767 F.3d at 1216. In sum, because " '[s]olemn declarations in open court carry a strong presumption of verity[,]' *Blackledge,* 431 U.S. at 74, 97 S. Ct. 1621[,]" when a defendant "ma[k]e[s] statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.' *United States v. Rogers,*

848 F.2d 166, 168 (11th Cir. 1988) (per curiam)." *Id.* at 1217 (some alterations added).[11]

In the factual resume that accompanied his written plea agreement, Quintero admitted to, among other things, the following "offense conduct:"

> On October 16, 2016, Baldwin County Sheriff's Office deputies went to 14640 Woodhaven Dairy Rd. in Summerdale, AL regarding a domestic violence call. Upon arrival, deputies observed two firearms located in a blue ford F-150 in the passenger seat with the window rolled down. Dep. Mctigue and Sgt. Burke spoke with PEDRO QUINTERO-ENRIQUES, who was at the residence. PEDRO QUINTERO-ENRIQUES admitted to knowingly possessing the two firearms, namely, a Ruger mini 14 model semi-automatic rifle bearing serial number 18239166, and a Mossberg Maverick 88 model 12-gauge shotgun bearing serial number MV21743J.

(Doc. 43 at 17). The factual resume also expressly advised that the statements therein were being provided "to assist the Court in determining whether a factual basis exists for [Quintero]'s plea of guilty." (*Id.*). At his guilty plea hearing, Quintero answered "yes" when asked by the Court if he had signed the plea

---

[11] *Accord, e.g.*, *United States v. Gonzalez–Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."); *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." (citing *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975) (per curiam))); *United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir. 2007) (per curiam) (unpublished) ("We apply a 'strong presumption' that statements made by a defendant during his plea colloquy are true, *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994); therefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.' *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988). Nothing in the record shows that Cardenas has satisfied his burden of showing that his sworn statements made during the plea colloquy-including that no one had predicted what sentence he would receive-were false; and we reject his claim that his guilty plea was involuntary.").

agreement and factual resume; that he had reviewed the plea agreement and factual resume with his counsel, understood their terms and conditions, and agreed with them; and that he "did…in fact, commit the acts and do the things that [he] admitted doing in th[e] statement" of offense conduct. (Doc. 67 [5/2/207 Change-of-Plea Hearing Trans.] at 4, 8). Quintero also answered "yes" when asked if he was "fully satisfied with the representation [he'd] received from [his] attorney in this case and ha[d] fully discussed with [his] attorney all of the facts surrounding the charge[.]" (*Id.* at 3).

Quintero has failed to explain why his admission that he knowingly possessed the firearms at issue in Count 2 should now be considered false. Moreover, given that he was seemingly aware of the evidence he claims Knight failed to investigate prior to pleading guilty, he cannot demonstrate that he would not have pleaded guilty but for Knight's failure to investigate. To the extent Quintero otherwise claims that Knight failed to do any meaningful work on his case, the claim is based on broad generalizations that do not warrant an evidentiary hearing.

Accordingly, Quintero is due no relief as to Ground 1.

## B.    Ground 2

Ground 2 alleges that Knight induced Quintero to plead guilty by giving him "false information" that he would be sentenced to only 12 to 18 months in prison. However, based on the express terms of the plea agreement and Quintero's sworn testimony at his guilty plea hearing, Quintero is due no relief on this ground.

Quintero's signed plea agreement expressly advised, among other things, (1) that the Court could impose a maximum penalty of 10 years imprisonment for Counts 1 and 2; (2) that the plea agreement did "not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range[;]" (3) that the Sentencing Guidelines "are advisory and do not bind the Court[;]" (4) "that the determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court[;]" and (5) that, with regard to sentencing, the Government's only obligation would be to "recommend to the Court that [Quintero] be sentenced at the low end of the advisory sentencing guideline range as determined by the Court." (Doc. 43 at 4 – 5, 7, ¶¶ 12 – 15, 23). At his guilty plea hearing, in response to questioning from the Court, Quintero made the following affirmations, among others, under oath: (1) that he had read the plea agreement and reviewed it with counsel, that he had signed it, and that he understood the terms and conditions; (2) that no one had made any promises to him, or pressured or threatened him, to plead guilty; (3) that he faced up to 10 years imprisonment for Counts 1 and 2; (4) that he had discussed the Sentencing Guidelines with counsel, understood how they might affect his case; (5) that the "sentence imposed might be different from any estimate [his] attorney or anyone else might have given" him and that "the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the guidelines[;]" and (6) that he would be bound by, and unable to withdraw, his

plea if "the sentence is more severe than…expected or if [the Court] d[id] not accept the sentencing recommendation in [the] plea agreement[.]"  (Doc. 67 at 3 – 6).

Thus, Quintero's allegation that Knight promised him only 12 to 18 months imprisonment for pleading guilty is affirmatively contradicted by Quintero's sworn testimony at his guilty plea hearing that no one made him any promises to induce him to plead guilty.  Alternatively, even assuming that Knight did advise Quintero that he would receive such a sentence, Quintero cannot show that he was prejudiced by Knight's advice because his plea agreement and guilty plea testimony affirmatively belie any indication that, but for Knight's error, he would not have plead guilty and would have instead insisted on going to trial.[12]

---

[12] *See United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (" '[A]n erroneous sentencing prediction by counsel is not ineffective assistance of counsel where ... an adequate plea hearing was conducted.' " (quoting *United States v. Shedrick,* 493 F.3d 292, 299 (3d Cir. 2007)) (alteration added)); *United States v. Tuyen Quang Pham*, 587 F. App'x 6, 11 (3d Cir. 2014) (unpublished) (" '[W]e have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted.' *United States v. Shedrick,* 493 F.3d 292, 299 (3d Cir. 2007). The written plea agreement stated that Pham faced a mandatory minimum penalty of ten years' imprisonment and a maximum penalty of life imprisonment for each count to which he pled guilty and that no one had made any promises to him to get him to enter a guilty plea. Moreover, the District Court conducted an extensive and thorough plea colloquy reiterating Pham's sentencing exposure and ensuring that Pham was not pleading guilty because anyone had made any promises outside the agreement. The District Court also explained that it could disregard recommendations by counsel at sentencing, but Pham would still be bound by his guilty plea. Pham told the District Court that he understood all this information. Accordingly, any misperceptions Pham had about his sentence when he decided to plead guilty should have been eliminated by the written plea agreement and the plea colloquy. Thus, the District Court properly denied Pham's claim because he failed to show that, but for his counsel's erroneous prediction about the safety valve provision, he would have pled not guilty and proceeded to trial."); *United States v. Kayode*, 777 F.3d 719, 728-29 (5th Cir. 2014) ("[W]hile judicial admonishments are not a substitute for effective

Accordingly, Quintero is due no relief as to Ground 2.

### C.    Ground 3

Ground 3 alleges that Knight improperly allowed the Government to introduce evidence underlying the drug charge in Count 3 at his sentencing hearing, resulting in a higher sentence. This claim is meritless.

The Sentencing Guidelines allowed the Court to consider evidence of crimes beyond those for which a defendant has been found guilty. For instance,

> [w]hen calculating a defendant's sentencing range under the Guidelines, the sentencing court must consider all "relevant conduct" as defined in [U.S.S.G ]§ 1B1.3. Because the limits of sentencing accountability are not coextensive with the scope of criminal liability, relevant conduct is broadly defined to include both uncharged and acquitted conduct that is proven at sentencing by a preponderance of the evidence. Under section 1B1.3, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant"—as well as "all reasonably foreseeable acts and omissions of others in furtherance of" jointly undertaken criminal activity—"that were part of the same course of conduct or *common scheme or plan* as the offense of conviction." U.S.S.G. § 1B1.3(a)(1), (2) (emphasis added); *see also* U.S.S.G. § 1B1.3, cmt. n.3. "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims,

---

assistance of counsel, they are relevant under the second *Strickland* prong in determining whether a defendant was prejudiced by counsel's error."); *United States v. Gutierrez*, 52 F. Supp. 3d 316, 321 (D. Mass. 2014) ("[E]ven assuming that at some point counsel had erroneously advised petitioner that he faced a maximum sentence of 151 months, by the time he pleaded guilty, he acknowledged that he was aware of the maximum sentence, the applicable sentencing range, and the Court's capacity to depart from the guidelines and impose a variant sentence. He expressed no surprise and raised no questions during the colloquy. And he made no effort to withdraw his plea before sentencing, after counsel allegedly advised him that the Court could sentence him to 210 months. That is not sufficient, under the circumstances, to demonstrate deficient performance or resulting prejudice.").

common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, cmt. n.9(A). Accordingly, [courts] consider whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind.

*United States v. Siegelman*, 786 F.3d 1322, 1332–33 (11th Cir. 2015) (footnotes, and some citations and quotations, omitted) (alterations added). Here, the criminal activity underlying all 3 counts of the superseding indictment was alleged to have occurred on the same date, October 16, 2016. (*See* Doc. 14).

Moreover, the applicable guideline for Quintero's Count 2 charge of being a felon in possession of a firearm was U.S.S.G. § 2K2.1. Under that guideline, "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense," then

§ 2K2.1's cross-reference provision directs the court to apply the higher of the adjusted offense level as calculated under § 2K2.1 and § 2X1.1. U.S.S.G. § 2K2.1(c)(1)(A). Section 2X1.1, which deals with attempt crimes in general, instructs courts to apply the guideline applicable to the substantive offense when the guideline for the substantive offense expressly covers attempt crimes. U.S.S.G. § 2X1.1(c). Section 2D1.1, the guideline applicable to drug crimes…, specifically covers attempt. *See* U.S.S.G. §§ 2D1.1, 2X1.1, comment. (n.1) (listing guideline sections that expressly cover attempts). Under § 2D1.1, the base offense level is determined by the amount of drugs involved and is enhanced by two levels "if a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1), (c).

*United States v. Webb*, 665 F.3d 1380, 1382 (11th Cir. 2012) (per curiam).  Thus, consideration of the drugs underlying Count 3 was appropriate under § 1B1.3 and § 2K2.1's cross-reference provision.

The presentence investigation report ("PSI" or "PSR") prepared by the Probation Office found that Count 3 was "related to" the charges to which Quintero pleaded guilty, and also applied the drug crimes guideline, § 2D1.1, under the § 2K2.1 cross-reference provision.  (*See* Doc. 50 at 5, 8, §§ 17, 37).  Knight filed written objections to the cross-reference to § 2D1.1 on the basis that Quintero was unaware of the presence of drugs in his residence, and to the drug amounts for which Quintero was being held responsible.  *See* (Doc. 51 at 1 – 2); *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) ("Facts contained in a PSI are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity.  It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes and precludes the argument that there was error in them." (citation and quotations omitted)).  Thus, the burden shifted to the Government to present sufficient evidence at sentencing to support those provisions of the PSR.  *See United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995) ("When a defendant challenges one of the factual bases of his sentence as set forth in the PSR, the Government has the burden of establishing the disputed fact by a preponderance of the evidence.").  After hearing the Government's evidence, the Court stated that

was "adopt[ing] the presentence report in its entirety, as presented…" (Doc. 71 at 40).

Given Knight's objections to the PSR, the Government was clearly permitted to present evidence of the drugs underlying Count 3 at sentencing, and Quintero has failed to explain how Knight could have had that evidence excluded. Thus, he has not shown that Knight was ineffective in this regard. Moreover, given that the Court adopted the PSR without change at the sentencing hearing after hearing the Government's evidence, the end result was the same as if Knight had not objected to the PSR in the first place. In filing objections, Knight at least gave Quintero a greater chance of avoiding having the drugs count against him by forcing the Government to present evidence of them at sentencing. Thus, Quintero cannot show that he was prejudiced by the presentation of the drug evidence at sentencing.[13]

---

[13] At the sentencing hearing, Knight also claimed that the plea negotiations included an agreement with the Government that Quintero would not be held accountable for the drug conduct at issue in Count 3. However, the Government disputed this contention and presented emails between Knight and the Assistant United States Attorney showing that the Government agreed to "take off the table a plea to Count Three" but "[a]t sentencing,…would still argue for relevant conduct regarding the drugs…" (Doc. 71 [Sentencing Hearing Transcript] at 6). The Court "accept[ed] that as in support of the Government's argument that the plea negotiations did not eliminate consideration of relevant conduct, at least a recitation of that evidence to the Court." (*Id.* at 7).

Quintero does not allege that Knight induced him to plead guilty by claiming that the Government had promised not to hold him accountable for any of the Count 3 drug conduct. Indeed, the plea agreement expressly advised: "The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background." (Doc. 43 at 5, ¶ 16).

Accordingly, Quintero is due no relief as to Ground 3.

### D.     Ground 4

At Quintero's sentencing hearing, the Government presented the testimony of three officers of the Baldwin County Sheriff's Office, along with 14 photographs of both the exterior and interior of Quintero's residence, and items found therein, taken during the search of the residence on October 16, 2016.  While Knight cross-examined both officers, he did not object to the Government admitting the photographs into evidence, nor did he present any evidence on Quintero's behalf. Ground 4 alleges that Knight was ineffective for failing to present any evidence in Quintero's favor at sentencing.  Quintero alleges that Knight "did not call the (phone) numbers" that he gave him, "so that he could put evidence together…" (Doc. 82 at 9).  He also appears to allege that the photographs presented at the sentencing hearing were "made up photos" that Knight should have challenged. (*Id.*).  Liberally construing the § 2255 motion, the undersigned also reads Ground 4 as faulting Knight for failing to present at sentencing the same evidence Quintero alleged in Count 1 that Knight failed to investigate prior to Quintero's guilty plea.

Quintero fails to explain what evidence Knight might have obtained by calling the phone numbers he claims he gave Knight, much less how it could have conceivably impacted his sentence.  While Quintero claims the photographs were "made up," he does not allege that he made Knight aware of this at sentencing, or that Knight was otherwise aware the photos were suspect.  When asked by the

Court if he had anything he "want[ed] to say before sentence is imposed[,]" Quintero responded: "No, sir." (Doc. 71 at 41).

As for Knight's failure to present the evidence at issue in Ground 1, Quintero again fails to explain the significance of Rodriges's accusation of him "selling marihuana," and none is apparent from the record, especially since selling or possessing marijuana was not raised as an issue at sentencing. As for Rodriges's purported knowledge of who put the firearms underlying the Count 2 charge in the truck where they were found, and evidence showing that Quintero did not use the truck where they were found, Quintero essentially faults Knight for failing to challenge at sentencing the conduct in Count 2 of knowingly possessing firearms while a convicted felon, to which he had already pleaded guilty. Knight was not ineffective failing to do so, as a defendant cannot use sentencing to re-litigate conduct to which he has already admitted in entering a guilty plea. *See United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009) ("A fact admitted to during a guilty plea cannot later be contested when it appears in the defendant's PSI."); *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The findings of fact of the sentencing court may be based on ... facts admitted by a defendant's plea of guilt," among other things.). Indeed, any attempt by Quintero at sentencing to distance himself from the firearms at issue in Count 2 that he had already admitted knowingly possessing would have put in jeopardy the 3-point reduction Quintero received in his PSI for acceptance of responsibility. *See United States v. Smith*, 127 F.3d 987, 989 (11th Cir. 1997) (en banc) ("Our case law permits a district court to

deny a defendant a reduction under § 3E1.1 based on conduct inconsistent with acceptance of responsibility, even when that conduct includes the assertion of a constitutional right…In addition, frivolous legal challenges could suggest to the district court that the defendant has not accepted responsibility for his conduct. Therefore, we hold that a district court may consider the nature of such challenges along with the other circumstances in the case when determining whether a defendant should receive a sentence reduction for acceptance of responsibility.").

Accordingly, Quintero is due no relief as to Ground 4. There being no other grounds for relief raised, Quintero's § 2255 motion is therefore due to be **DENIED** and **DISMISSED with prejudice**.

### E.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rule 11(a) of the Rules Governing § 2255 Proceedings. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C.A. § 2253(c)(1)(A).

Where, as here, the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)

("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).). In all cases, a "certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted). However, "a COA does not require a showing that the appeal will succeed." *Id.* at 337.

Upon consideration, the undersigned finds that Quintero should be **DENIED** a Certificate of Appealability as to the present § 2255 motion, as reasonable jurists would not debate whether Quintero's § 2255 motion should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further.[14]

---

[14]    Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

### F.   Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3). A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). In other words, a

> party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester,* 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 515 (11th Cir. 1991).

---

Should the Court adopt this recommendation and deny a certificate of appealability, the movant "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2255 Proceedings for United States District Courts.

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished).

Having considered the issues raised, as set forth above, the undersigned **RECOMMENDS** the Court certify that any appeal by Quintero of the denial of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[15]

## IV.   *Conclusion*

In accordance with the foregoing analysis, it is **RECOMMENDED** that Quintero's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docs. 81, 82) be **DENIED** and **DISMISSED with prejudice**.   It is further **RECOMMENDED** that the Court find Quintero not entitled to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; S.D. Ala. GenLR 72(c).   The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's

---

[15] Should the Court adopt this recommendation and deny leave to appeal *in forma pauperis*, the petitioner may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 28th day of September 2018.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**